UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
WESTCHESTER DIVISION

FILED

-------------------------------------------------------------------X

Secor Homes, Inc.,  Zalman Klein and Dina Klein,

                                   Plaintiffs,

-against-

Shlomo Gutman, Menachem Gutman, Aryeh
Gutman, Aaron Eagle, Jacob Joseph Eagle, Berel
Eagle, Perry Gutman Lerner, Lazar Lerner,
Abraham Singer, Sarah Gutman Singer, Idy
Gutman, Elky Gutman, Chaim "Henry" Gutman,
Yaffa Gutman, Nachman Gutman, Hindy Gutman
Mueller, Esther Malky Gutman, Tzvi Gutman,
Shmuel Gutman, Boruch Gutman, Jacob Gutman,
Chaim Gutman, Eliezer Gutman, Faigy Lefkowitz,
Nina Feig, Darren Oved, Oved & Oved LLP,
Central Equities Credit Corp., Spring Gardens
Corp., SME Corp., Springfield Meadow Estates,
Top Quality Home Builders Corporation, 185
Marcy Corp., 185 Marcy LLC, B&N Properties,
LLC, Broadway Central Management LLC., Good
Paz Company, AGE Holding Co., A to Z
Distributors, Eagle Estate LLC, Aryeh Weber,
Adam Drexler, Nicholas Fortuna, Allyn & Fortuna
LLP and Zalman Ashkenazi.

                                   Defendants.

-------------------------------------------------------------------X

**COMPLAINT**
(Jury Trial
Requested)

'11 CIV 00895

JUDGE SEIBEL

        Plaintiffs, Secor Homes, Inc.,  Zalman Klein and Dina Klein, by

undersigned counsel, allege against Defendants Shlomo Gutman, Menachem Gutman,

Aryeh Gutman, Aaron Eagle, Jacob Joseph Eagle, Berel Eagle, Perry Gutman Lerner,

Lazar Lerner, Abraham Singer, Sarah Gutman Singer, Idy Gutman, Elky Gutman, Chaim

"Henry" Gutman, Yaffa Gutman, Nachman Gutman, Hindy Gutman Mueller, Esther

Malky Gutman, Tzvi Gutman, Shmuel Gutman, Boruch Gutman, Jacob Gutman, Chaim

Gutman, Eliezer Gutman, Faigy Lefkowitz, Nina Feig, Darren Oved, Oved & Oved LLP,

Central Equities Credit Corp., Spring Gardens Corp., SME Corp., Springfield Meadow Estates, Top Quality Home Builders Corporation, 185 Marcy Corp., 185 Marcy LLC, B&N Properties, LLC, Broadway Central Management LLC., Good Paz Company, AGE Holding Co., A to Z Distributors, Eagle Estate LLC, Aryeh Weber, Adam Drexler, Nicholas Fortuna, Allyn & Fortuna LLP and Zalman Ashkenazi as follows:

## INTRODUCTION

1.      This action arises out of a pattern of racketeering activities by Defendants, led by Defendant Aryeh Gutman, which activities defrauded Plaintiffs out of millions of dollars.

2.      Zalman Klein and Aryeh Gutman were business partners engaged primarily in the purchase, development and sale of real estate for many years, dating back as early as 1967.  They are members of a close-knit community in Brooklyn.

3.      As business partners, each one would tend to the day-to-day business of certain of their business endeavors, leaving the other to take care of their other business endeavors.  Zalman Klein agreed to such an arrangement based upon the trust that he had for Aryeh Gutman.

4.      Unbeknownst to Zalman Klein, Aryeh Gutman exploited Zalman Klein's trust, encouraging Zalman Klein to invest in various endeavors.   Aryeh Gutman and Defendants then engaged in a pattern of illegal conduct in which they used the assets and proceeds from such endeavors for Defendants' personal benefit to the detriment of Plaintiffs.

5.      In or around early 2001, Zalman Klein discovered that Aryeh Gutman had transferred all of the assets of 185 Marcy Corp., in which Zalman Klein owned 50

percent of the shares, to 185 Marcy LLC, a new entity in which Zalman Klein had no ownership interest, but which was owned by 15 members of Aryeh Gutman's family.

6. After obtaining subpoenaed documents which revealed, among others, Aryeh Gutman's transfer of the 185 Marcy Corp. assets, Zalman Klein conducted research and found out about a pattern of deceptive and fraudulent activities that Aryeh Gutman and others had engaged in with the purpose of enriching Defendants at the expense of Zalman Klein and Plaintiffs.

7. In 2003, in order to facilitate efforts to resolve all claims between the Gutmans and the Kleins, a stay was entered in an action brought by Aryeh Gutman and others against Zalman Klein and others. The stay prevented Zalman Klein from commencing any new lawsuits against Aryeh Gutman. The Federal Judge presiding over the matter recently clarified the scope of the stay so that prospectively it related only to state court matters and Plaintiffs now bring this lawsuit.

8. The Defendants' pattern of illegal conduct caused Zalman Klein to suffer tens of millions of dollars of losses involving real estate endeavors in the Counties of Kings, Queens and Rockland as well as in New Jersey.

9. A chart summarizing Defendants' illegal activities is attached hereto as Exhibit A.

## PARTIES AND JURISDICTION

10. Plaintiff Secor Homes, Inc. is a domestic corporation with an office in Rockland County, State of New York.

11. Plaintiff Zalman Klein is a natural person, who resides in Kings County, State of New York.

12.     Plaintiff Dina Klein is a natural person, who resides in Kings County, State of New York, and is the wife of Plaintiff Zalman Klein.

13.     Defendant Shlomo ("Shlomie") Gutman is a natural person, who resides in Ocean County, State of New Jersey, and is the son of Aryeh Gutman.

14.     Defendant Menachem Gutman, also known as Mendy or Mendel Gutman is a natural person, who resides in Kings County, State of New York, and is the son of Aryeh Gutman.

15.     Defendant Aryeh Gutman is a natural person, who resides in Kings County, State of New York.

16.     Defendant Aaron Eagle is a natural person, who resides in Kings County, State of New York.

17.     Defendant Jacob Joseph Eagle is a natural person, who resides in Kings County, State of New York.

18.     Defendant Berel Eagle is a natural person, who resides in Kings County, State of New York.

19.     Defendant Perry Gutman Lerner is a natural person, who resides in Kings County, State of New York, and is the daughter of Aryeh Gutman.

20.     Defendant Lazar Lerner is a natural person, who resides in Kings County, State of New York, and is the son-in-law of Aryeh Gutman, and is married to Perry Gutman Lerner.

21.     Defendant Abraham Singer is a natural person, who resides in Kings County, State of New York, and is the son-in-law of Aryeh Gutman.

22.     Defendant Sarah Gutman also known as Sarah Gutman Singer is a natural person, who resides in Kings County, State of New York, and is the daughter of Aryeh Gutman, and is married to Abraham Singer.

23.     Defendant Idy Gutman is a natural person, who resides in Kings County, State of New York, and is the daughter-in-law of Aryeh Gutman and wife of Menachem Gutman.

24.     Defendant Elky Gutman is a natural person, who resides in Kings County, State of New York, and is the wife of Aryeh Gutman.

25.     Defendant Henry Gutman, also known as Chaim Gutman, is a natural person, who resides in Rockland County, State of New York, and is the brother of Aryeh Gutman.

26.     Defendant Yaffa Gutman is a natural person, who resides in Rockland County, State of New York, and is the wife of Henry Gutman and the sister-in-law of Aryeh Gutman.

27.     Defendant Nachman Gutman is a natural person, who resides in Kings County, State of New York, and is the son of Aryeh Gutman.

28.     Defendant Hindy Gutman Mueller is a natural person, who resides in Kings County, State of New York, and is the daughter of Aryeh Gutman.

29.     Defendant Esther Malky Gutman is a natural person, who resides in Kings County, State of New York, and is the daughter of Aryeh Gutman.

30.     Defendant Tzvi Gutman, also known as Zvi Gutman and Hershy Gutman, is a natural person, who resides in Kings County, State of New York, and is the son of Aryeh Gutman.

31.     Defendant Shmuel Gutman, also known as Samuel Gutman, is a natural person, who resides in Kings County, State of New York, and is the son of Aryeh Gutman.

32.     Defendant Boruch Gutman is a natural person, who resides in Ocean County, State of New Jersey, and is the son of Aryeh Gutman.

33.     Defendant Jacob Gutman, also known as Yakov Gutman, is a natural person, who resides in Kings County, State of New York, and is the son of Aryeh Gutman.

34.     Defendant Chaim Gutman is a natural person, who resides in Ocean County, State of New Jersey, and is the son of Aryeh Gutman.

35.     Defendant Eliezer Gutman is a natural person, who resides in Ocean County, State of New Jersey, and is the son of Aryeh Gutman.

36.     Defendant Faigy Lefkowitz, also known as Faigy Gutman, is a natural person, who resides in Kings County, State of New York, and is the daughter of Aryeh Gutman.

37.     Defendant Nina Feig, also known as Pnina Feig is a natural person, who resides in Rockland County, State of New York, and is the daughter of Henry Gutman and the niece of Aryeh Gutman.

38.     Defendant Darren Oved, Esq. is an attorney licensed to practice law in the State of New York, with a business address at 101 Avenue of the Americas, 15th floor, New York, New York, who was retained by or at the direction of Aryeh Gutman to perform professional services.

39.     Defendant Oved & Oved LLP is a New York limited liability partnership, with a principal office at 101 Avenue of the Americas, 15th floor, New York, New York, and was retained by or at the direction of Aryeh Gutman to perform professional services.

40.     Defendant Central Equities Credit Corp. is a New York corporation, with a principal office at 185 Marcy Avenue, Brooklyn, New York.

41.     Defendant Spring Gardens Corp. is a New York corporation, with a principal office at 277 Broadway Suite 706, New York, New York.

42.     Defendant Springfield Meadow Estates is a partnership, with a principal office at 12 Heyward Street, Brooklyn, New York.

43.     Defendant SME is a New York corporation, with a principal office at 185 Marcy Avenue, Brooklyn, New York.

44.     Defendant Top Quality Home Builders Corporation is a New York corporation, with a principal office at 103 Spencer Street, Brooklyn, New York.

45.     Defendant 185 Marcy Corp. is and was a New York corporation, managed, controlled, and operated by and on behalf of Aryeh Gutman.

46.     Defendant 185 Marcy LLC is and was a New York limited liability company, managed, controlled, and operated by and on behalf of Aryeh Gutman.

47.     Defendant B&N Properties, LLC, is and was a New York limited liability company, managed, controlled, and operated by and on behalf of Aryeh Gutman and Henry Gutman.

48.     Defendant Broadway Central Management LLC is and was a New York limited liability company, managed, controlled, and operated by and on behalf of Aryeh Gutman.

49.     Defendant Good Paz Company is or was a New York partnership established by Aryeh Gutman, and consisting of Aryeh Gutman, Henry Gutman and Zalman Klein, and from time to time other persons, as its shareholders, for the purpose of owning and developing real estate.

50.     Defendant AGE Holding Co. is or was a New York corporation, organized, established, managed, controlled, and operated by and on behalf of Aryeh Gutman.

51.     Defendant A to Z Distributors is or was a business entity believed to be an alter-ego of AGE Holding Co., organized, established, managed, controlled, and operated by and on behalf of Aryeh Gutman.

52.     Defendant Eagle Estate LLC is a New York limited liability company with a principal office at 1274 49th Street, Brooklyn, New York.

53.     Defendant Aryeh Weber is an attorney licensed to practice law in the State of New York, with a business address of 674 East 3rd Street, Brooklyn, NY 11218.

54.     Defendant Adam Drexler is an attorney licensed to practice law in the State of New York, with a business address of 200 Madison Avenue, Fifth Floor, New York, NY 10016.

55.     Defendant Nicholas Fortuna is an attorney licensed to practice law in the State of New York, with a business address of 200 Madison Avenue, Fifth Floor, New York, NY 10016.

56.     Defendant Allyn & Fortuna LLP is a New York limited liability partnership with a principal office at 200 Madison Avenue, Fifth Floor, New York, NY 10016.

57.     Defendant Zalman Ashkenazi is a natural person, who resides in Kings County, State of New York.

58.     This Court has subject matter jurisdiction of the case pursuant to 28 U.S.C. §§ 1331 and 1367, in that RICO claims arise under the laws of the United States, and the state-law claims are so related to the RICO claims that they form part of the same case or controversy.

59.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claim occurred in the Southern District of New York.

## ALLEGATIONS COMMON TO ALL CLAIMS

### Background

60.     Plaintiffs bring this Complaint to recover damages relating to a pattern of illegal activities by Defendants, which activities defrauded Plaintiffs of millions of dollars.

61.     Over the course of many years, Aryeh Gutman used the relationship of trust he had with Zalman Klein to form and purchase numerous business entities and properties.

62.     Through a pattern of illegal activities by Defendants, nearly each and every entity and property, whose management was charged to Aryeh Gutman, became a tool for defrauding Zalman Klein of his personal investments and of the value of Zalman Klein's ownership interests in each endeavor.

63.     Zalman Klein and Aryeh Gutman were business partners in multiple business entities.

64.     Their business relationship was based upon the trust that they had for one another. Based on this trust, each one would tend to the day-to-day business needs of particular businesses, leaving the other to take care of the other businesses.

65.     As background, and as will be explained more fully below, the following are some of the entities in which Zalman Klein and Aryeh Gutman had a joint ownership interest:

    a.   185 Marcy Corp., of which the corporate stock was owned equally by Zalman Klein and Aryeh Gutman., and which owned the 185 Marcy Ave. property;

    b.   Mendex, of which the corporate stock was owned equally by Zalman Klein and Aryeh Gutman;

    c.   Paz Holding Corp., of which the corporate stock was owned equally by Zalman Klein and Aryeh Gutman;

    d.   Paz Ross, of which the corporate stock was owned equally by Zalman Klein and Aryeh Gutman;

    e.   Paz Jersey Corp., of which the corporate stock was owned equally by Zalman Klein and Aryeh Gutman;

    f.   Good Paz, of which the corporate stock was owned by Zalman Klein, Aryeh Gutman and Aryeh Gutman's brother, Henry Gutman, and which owned the Broadway and Throop Properties;

    g.   Springfield Meadows Estates, a partnership in which Zalman Klein and Aryeh Gutman were equal partners and which owned the Queens Property;

h.   SME Corp., of which the corporate stock was owned equally by Zalman Klein and Aryeh Gutman, and which was incorporated to succeed Springfield Meadows Estates;

66.    In or around 2001, Zalman Klein discovered that Aryeh Gutman had transferred all of the assets of 185 Marcy Corp., in which Zalman Klein had a 50 percent ownership interest, to 185 Marcy LLC, a new entity in which Zalman Klein had no ownership interest, but which was owned by 15 members of Aryeh Gutman's family.

67.    After finding out about Aryeh Gutman's transfer of the 185 Marcy Corp. assets, Zalman Klein conducted research and began discovering a pattern of deceptive and fraudulent activities that Aryeh Gutman and others had engaged in with the purpose of enriching Defendants at the expense of Zalman Klein.

68.    Such fraudulent activities include, but are not limited to:

a.   Prior to its transfer of 185 Marcy Corp.'s  assets to 185 Marcy LLC, Gutman family members made a series of transfers of Zalman Klein's shares of 185 Marcy Corp. to members of Aryeh Gutman's family;

b.   Money from a loan by Liberty Mortgage to 185 Marcy Corp. was diverted to entities owned by the Gutman family;

c.   Money from a loan by Brooklyn Federal to 185 Marcy Corp. was diverted by Aryeh Gutman;

d.   185 Marcy Corp. paid Aryeh Gutman's personal home mortgage and legal fees of entities other than 185 Marcy Corp. or 185 Marcy LLC;

e.   Aryeh Gutman transferred a portion of Zalman Klein's shares of Good Paz to himself and his children;

      f.  Aryeh Gutman withheld financial distribution from Good Paz to Zalman Klein;

      g.  Aryeh Gutman withdrew checks for $200,000 and $800,000 from Good Paz;

      h.  Good Paz fraudulently filed for bankruptcy;

      i.  Income from the Broadway Property was diverted from Good Paz, owned by Zalman Klein, Aryeh Gutman and Henry Gutman, to Paninim Equities, and Broadway Central Management Inc., a corporation in which Aryeh Gutman owns or owned the corporate stock and in which Zalman Klein had no ownership interest;

      j.  The Broadway Property was sold below market value as a result of Aryeh Gutman's engineered bankruptcy of Good Paz, and was ultimately sold to B&N Property Properties LLC, a company in which the corporate stock is or was owned by Gutman family interests;

      k.  The Throop Property, was sold below market value as a result of Aryeh Gutman's engineered bankruptcy of Good Paz, and was ultimately sold to A to Z Distributors, a sham entity believed to be an alter-ego for AGE, a company in which the corporate stock is or was owned by Aryeh Gutman and Elimelech Gutman;

      l.  The Queens Property, was transferred for no consideration from Springfield Meadow Estates and/or SME Corp., owned equally by Zalman Klein and Aryeh Gutman, to Spring Gardens Corp., a company in which the corporate stock is or was owned by Abraham Singer;

m. Funds from 185 Marcy Corp. were used to transfer the mortgage on the Queens Property to Top Quality Home Builders Corporation , a company in which the corporate stock is or was owned by Aryeh Gutman;

n. The assignment of the 12 Heyward Street mortgage for no consideration from Paz Holding, a company in which the corporate stock was owned equally by Zalman Klein and Aryeh Gutman, to AGE , a company in which the corporate stock is or was owned by Aryeh Gutman, and in which Zalman Klein owned no corporate stock;

o. Aryeh Gutman's personal use of Paz Jersey Corp. funds, a company in which the corporate stock is or was owned by Zalman Klein and Aryeh Gutman;

p. Aryeh Gutman knowingly filed baseless Notices of Pendency in the Rockland County Clerk's Office against the Weiner Lots, at instrument #s 15330, 15332, 15333, 15334, clouding title to lots owned by the Klein family;

q. Aryeh Gutman met with Eagle family members and conspired with the Eagle family to fraudulently transfer and encumber Weiner Lots 8 and 9;

r. Jacob Eagle falsely represented himself as Secor's president and signed and recorded deeds purporting to transfer title to Weiner Lots 8 and 9, from Secor to Eagle Estate LLC;

s. Eagle Estate LLC commenced an action under Rockland County Index Number 3057/ 2009, bearing the caption *Eagle Estate LLC and Secor*

13

*Homes Inc. v. Zalman Klein, Benjamin Klein, Paz Estates LLC and Paz Construction, LLC*, asserting claims of ownership relating to Weiner Lots 8 and 9;

t.   The Eagle family knowingly filed baseless Notices of Pendency in the Rockland County Clerk's office under Instrument Numbers 12321/2009, clouding title to Weiner Lots 8 and 9.

69.   The brazenly fraudulent and deceptive nature of Defendants' acts is best demonstrated by two separate back-dated documents created and signed by Aryeh Gutman purporting to gift stock of 185 Marcy Corp. to Aryeh Gutman's daughter and son-in-law, Sarah and Abraham Singer, on December 20, 1990 and January 26, 1991. But Sarah Gutman had not yet married Abraham Singer in 1990 and 1991. Abraham Singer did not come to the United States from England and did not marry Sarah Gutman until 1992. There could not have been a transfer of stock to "Sarah Singer" prior to 1992.

70.   Zalman Klein did not begin discovering the Defendants' massive, concealed frauds until sometime in 2001. Numerous lawsuits ensued. In 2003, in order to facilitate efforts to resolve all claims between the Gutmans and the Kleins, a stay was entered in an action brought by Aryeh Gutman and others against Zalman Klein and others. The stay prevented Zalman Klein from commencing any new lawsuits against Aryeh Gutman. The Federal Judge presiding over the matter recently clarified the scope of the stay so that prospectively it related only to state court matters and Plaintiffs now bring this lawsuit.

## 185 Marcy Corp.

71.  In or about February of 1983, Aryeh Gutman and Zalman Klein formed 185 Marcy Corp. as equal shareholders for the purpose of purchasing 185 Marcy Avenue, Brooklyn, New York ("185 Marcy Avenue").

72.  On or about March 7, 1983, 185 Marcy Corp. purchased 185 Marcy Avenue from the YMCA, which had foreclosed its mortgage on the property.

73.  185 Marcy Corp. paid approximately $61,000 to the YMCA plus payment of outstanding real estate taxes in the amount of $92,182 and $500 in fees.

74.  All of the funds used to purchase and maintain 185 Marcy Avenue came from entities jointly owned by Aryeh Gutman and Zalman Klein, including, primarily Paz Holding.

75.  According to Aryeh Gutman and Zalman Klein's operating arrangement, and based upon their longstanding personal and business relationship of trust, confidence and fair dealing, at all times relevant herein, Aryeh Gutman controlled, operated and managed Paz Holding and 185 Marcy Corp. and maintained all of the accounts, books, and records of Paz Holding and 185 Marcy Corp.

76.  Thus, Zalman Klein, relying on his longstanding relationship of trust with Aryeh Gutman, did not demand frequent accountings and relied on the information Aryeh Gutman chose to provide to him.

77.  Aryeh Gutman converted and stole the income generated by the operation and management of 185 Marcy Avenue (as is described below), including the income derived from the various leases for portions of said premises.  Aryeh Gutman failed to account for and remit any portion of said proceeds to Zalman Klein, and diverted said

proceeds for his own purposes, and this constitutes criminal acts, including mail fraud, wire fraud and financial institution fraud by Aryeh Gutman.

78.   Following the purchase of 185 Marcy Avenue, and between approximately 1983 and 1990, 185 Marcy Corp. obtained funding in excess of $2,400,000, for the renovation, maintenance and development of 185 Marcy Avenue, from business entities which Aryeh Gutman controlled and in which Zalman Klein had an ownership interest.

79.   185 Marcy Corp. also received funds totaling approximately $106,250 from Zalman Klein's personal funds for its development in and about 1989.

80.   Aryeh Gutman represented to Zalman Klein, both in person and during numerous telephone conversations, that the funds were necessary to renovate, maintain and develop 185 Marcy Avenue and that the funds would be repaid with interest by 185 Marcy Corp.

81.   All of the funds obtained from personal funds of Zalman Klein, and business interests owned by Aryeh Gutman and Zalman Klein were loans to 185 Marcy Corp.  The loans were to be used to purchase, renovate, maintain and develop 185 Marcy Avenue.

82.   Aryeh Gutman's representations to Zalman Klein were false and fraudulent when made, as Aryeh Gutman did not intend to and did not cause 185 Marcy Corp. to repay Zalman Klein or any of the entities owned by Zalman Klein.

83.   To date, such loans from Zalman Klein and entities he co-owns have not been repaid.

84.   Aryeh Gutman's representations to Zalman Klein and the entities owned by Zalman Klein were false and fraudulent, as Aryeh Gutman did not use all of the

borrowed funds for the renovation, maintenance and development of 185 Marcy Avenue, as Aryeh Gutman diverted funds for his own purposes and benefit.

85.    The failure and intentional refusal of 185 Marcy Corp., as directed by Aryeh Gutman, to repay the various and numerous aforesaid loans, and the diversion of said loans to the personal benefit of Aryeh Gutman and his various accomplices and co-conspirators, constitute thefts from Zalman Klein and the various aforesaid business entities in which Zalman Klein had an ownership interest, and constitute criminal acts, including mail fraud, wire fraud and financial institution fraud by Aryeh Gutman.

Fraudulent Dilution of Zalman Klein's
Shares of Marcy Corp.

86.    At a date and time presently unknown but believed to be in May, 1993, Aryeh Gutman, falsely and fraudulently prepared and caused to be prepared, and executed documents intended to evidence that a meeting of the shareholders of 185 Marcy Corp. had been held on or about January 2, 1990 and was attended by Aryeh Gutman and Zalman Klein.

87.    In truth and in fact no such meeting was held.

88.    Aryeh Gutman falsely and fraudulently prepared and executed documents intended to evidence that at such alleged meeting of the shareholders of 185 Marcy Corp., the shareholders of 185 Marcy Corp. agreed to issue additional shares for sale to new investors, thereby diluting the interest of the existing shareholders by 50 percent.

89.    In truth and in fact no such agreement was ever made and no additional shares were issued.

90.   In furtherance of his scheme to defraud, Aryeh Gutman forwarded from Brooklyn, New York by mail and fax, the false and fraudulent records concerning the alleged meeting of the shareholders of 185 Marcy Corp., of January 2, 1990, to his accountant S. David Belsky at his offices in New York, New York.

91.   The creation and dispatch by Aryeh Gutman of the false and fraudulent records concerning the alleged meeting of the shareholders of 185 Marcy Corp. on January 2, 1990, constitute criminal acts, including mail fraud, wire fraud and financial institution fraud by Aryeh Gutman.

92.   Aryeh Gutman falsely and fraudulently prepared and caused to be prepared and executed documents intended to evidence that a meeting of the shareholders of 185 Marcy Corp. had been held on or about March 20, 1990 and attended by Aryeh Gutman, Zalman Klein, and Henry Gutman.

93.   According to false documents created by Aryeh Gutman, or caused to be created by Aryeh Gutman, Aryeh Gutman claims to have issued an additional 200 shares of 185 Marcy Corp. at the purported March 20, 1990 board meeting.

94.   Such falsified documents also indicated that at such alleged meeting, the said shareholders of 185 Marcy Corp. agreed to sell the "newly issued" 200 shares for $253,000.   At that time, entities owned by Zalman Klein and Aryeh Gutman had already invested over $2.4 million in 185 Marcy Corp.

95.   In truth and in fact no such meeting was held and no such agreement or investment was ever made.

96.   Despite the fact that there was no consideration paid for them, and no agreement to issue them, the non-existent 200 shares were allegedly issued to "new investors, one of which is an existing shareholder".

97.   Such alleged fraudulent issuance of shares diluted the existing shares of 185 Marcy Corp. by 50 percent.

98.   The creation and dispatch by Aryeh Gutman of the false and fraudulent records concerning the alleged meeting of the shareholders of 185 Marcy Corp. on March 20, 1990, constitute criminal acts, including mail fraud, wire fraud and financial institution fraud by Aryeh Gutman.

99.   In furtherance of his scheme to defraud, Aryeh Gutman falsely and fraudulently prepared and caused to be prepared and executed, documents intended to evidence that on December 20, 1990, Aryeh Gutman and his wife Elky Gutman, and Henry Gutman and his wife Yaffa Gutman, gifted stock of 185 Marcy Corp. to Aryeh Gutman's children: Mendy and Idy Gutman, Sarah and Abraham Singer.

100.   The fraudulent nature of this back-dated document is illustrated by the fact that Aryeh and Elky Gutman did not know of an Abraham Singer in 1990, as he came to the United States from England in 1992 and married their daughter Sarah.  Further, there was no one by the name of Sarah Singer in 1990, as Sarah Gutman married Abraham Singer in 1992.

101.   Further, despite the fact that the document purported to gift shares from Elky and Aryeh Gutman, Elky didn't have any shares to gift.  She was not a shareholder. Similarly, the documents state that Henry and his wife Yaffa also gifted shares.  Neither of them had shares to gift, as they were not shareholders.

102.  In furtherance of his scheme to defraud Zalman Klein, Aryeh Gutman falsely and fraudulently prepared and caused to be prepared and executed, documents intended to evidence that on January 26, 1991, Aryeh Gutman and his wife Elky Gutman, and Henry Gutman and his wife Yaffa Gutman gifted stock of 185 Marcy Corp. to Mendy and Ida Gutman and to Sarah and Abraham Singer.

103.  The fraudulent nature of this back-dated document is illustrated by the fact that Aryeh and Elky Gutman did not know of an Abraham Singer in 1991, as he came to the United States from England in 1992 and married their daughter Sarah.  Further, there was no one by the name of Sarah Singer in 1991, as Sarah Gutman married Abraham Singer in 1992.

104.  Further, despite the fact that the document purported to gift shares from Elky and Aryeh Gutman, Elky didn't have any shares to gift.  She was not a shareholder. Similarly, the documents state that Henry and his wife Yaffa also gifted shares.  Neither of them had shares to gift, as they were not shareholders.

105.  In furtherance of Aryeh Gutman's scheme to defraud, and acting in concert with and conspiring, aiding and abetting Aryeh Gutman and at the direction of Aryeh Gutman, Perry Lerner faxed information and the false and fraudulent documents concerning the ownership of 185 Marcy Corp. stock to Aryeh Gutman's accountant S. David Belsky ("Belsky") on or about May 11, 1993.

106.  In furtherance of Aryeh Gutman's scheme to defraud, and acting in concert with and conspiring, aiding and abetting Aryeh Gutman and at the direction of Aryeh Gutman, accountant Belsky faxed information and false and fraudulent

documents concerning the ownership of 185 Marcy Corp. stock to offices used by Aryeh Gutman on or about August 25, 1993.

107.  The preparation and execution of the aforesaid false and fraudulent documents concerning the ownership and stock of 185 Marcy Corp. and the dispatch of such documents were in furtherance of Aryeh Gutman's scheme to defraud and steal from Zalman Klein by, among other things, substantially and falsely diluting his ownership interest and equity in 185 Marcy Corp.  Such acts constitute criminal acts, including mail fraud, wire fraud and financial institution fraud by Aryeh Gutman, Elky Gutman, Chaim (Henry) Gutman, Yaffa Gutman,  Mendy Gutman, Idy Gutman, Sarah Gutman, Abraham Singer and Perry Lerner.

108.  In deposition testimony under oath on or about October 11, 2000, in *Aryeh Gutman v. A to Z et al.*, Sup. Ct. Kings Co., Index # 50105/99, Aryeh Gutman testified that in or about 1987 or 1988, he sold 50 percent of the ownership of 185 Marcy Corp., to his three brothers, Henry Gutman, Elimelech Gutman, and Jacob Gutman. Aryeh Gutman's testimony on or about October 11, 2000, that in or about 1987 or 1988, he sold fifty percent of the ownership of 185 Marcy Corp., to his three brothers was false and fraudulent, and was made in furtherance of his scheme to defraud, and constitute criminal acts, including mail fraud, wire fraud and financial institution fraud by Aryeh Gutman.  In deposition testimony under oath on or about October 10, 2000, Aryeh Gutman testified that in or about 1991, his son Mendy Gutman and his daughter Sarah Singer purchased 37.5  percent interests of the ownership of 185 Marcy Corp. for between $200,000 and $250,000, and that said sums were deposited into the bank account of 185 Marcy Corp.

109.  Aryeh Gutman's testimony on or about October 10, 2000, that in or about 1991, his son Mendy Gutman and his daughter Sarah Singer purchased 37.5  percent interests of the ownership of 185 Marcy Corp., and that their payments were deposited into the bank account of 185 Marcy Corp., was false and fraudulent, and was made in furtherance of Aryeh Gutman's scheme to defraud, and constitute criminal acts, including mail fraud, wire fraud and financial institution fraud by Aryeh Gutman, Mendy Gutman, and Sarah Singer.

110.  On a date on about and between January 12, 1995 and August 30, 1996, Aryeh Gutman caused an entry to be made in the business records of 185 Marcy Corp., indicating that a meeting of the Board of Directors of 185 Marcy Corp. had been held on January 12, 1995, and attended by Aryeh Gutman, Zalman Klein, Henry, and Mendy Gutman.

111.  On a date on about and between January 12, 1995 and August 30, 1996, Aryeh Gutman caused an entry to be made in the business records of 185 Marcy Corp., indicating that at the purported January 12, 1995 board meeting the attending shareholders of the corporation had agreed to "give up" 12.5 percent of their existing shares to an investor in exchange for a loan of $300,000.

112.  Said meeting was not held and no such agreement was made.

113.  In truth and in fact, this was a false and fraudulent entry in furtherance of Aryeh Gutman's scheme to defraud Zalman Klein by, among other things, substantially diluting his ownership interest and equity in 185 Marcy Corp.

114.  Aryeh Gutman's false and fraudulent entry in the business records of 185 Marcy Corp. describing such alleged meeting and dispatch of such minutes constitute

criminal acts, including mail fraud, wire fraud and financial institution fraud by Aryeh Gutman.

115.  On a date on about and between May, 1995 and August 30, 1996, Aryeh Gutman caused an entry to be made in the business records of 185 Marcy Corp., indicating that a meeting of the Board of Directors of 185 Marcy Corp. had been held in May of 1995, and attended by Henry Gutman and Mendy Gutman.

116.  The minutes of the purported May, 1995 meeting state that the directors present resolved to give Sarah Singer and Mendy Gutman 12.5 percent  (50 shares) from Aryeh Gutman and Zalman Klein in payment and in exchange for having arranged a loan of $300,000 for 185 Marcy Corp.

117.  Said meeting was not held and no such agreement was made.

118.  On or about August 30, 1996, and in furtherance of his scheme to defraud, Aryeh Gutman caused the minutes of the alleged meetings of the board of directors of 185 Marcy Corp. of May of 1995, to be sent by fax over interstate telephone lines.

119.  Aryeh Gutman's entry and dispatch of such false and fraudulent business record constitute criminal acts, including mail fraud, wire fraud and financial institution fraud by Aryeh Gutman, Mendy Gutman and Sarah Singer.

120.  On June 9, 1992 Aryeh Gutman delivered a corporate resolution to New York City that the officers signed a resolution authorizing 185 Marcy Corp. to enter into a fifteen year lease with the city.  Zalman Klein is one of the signatories to the resolution. Zalman Klein never authorized such a resolution, didn't know about such a resolution, did not sign the resolution and the signature is a forgery.

121.  On or about June 21, 1993, and in furtherance of his scheme to defraud, Aryeh Gutman falsely represented to the City of New York, in a lease signed by Aryeh Gutman with the City for 185 Marcy Avenue, that the shareholders of 185 Marcy Corp. at the time were: Mendy Gutman 25 percent; Aryeh Gutman 5 percent; Sarah Gutman 45 percent and Zalman Klein 25 percent.   Consent of all shareholders to such lease was delivered to New York City.   Zalman Klein is one of the signatories to the consent. Zalman Klein never authorized such a consent, didn't know about such a consent, did not sign the consent, and the signature is a forgery.

122.  This dilution of Zalman Klein's 50 percent share of 185 Marcy Corp. became complete when, in or about December, 1999, Aryeh Gutman fraudulently transferred all of 185 Marcy Corp.'s assets to 185 Marcy LLC.  Zalman Klein does not have any ownership interest in 185 Marcy LLC.  Rather, 15 members of the Gutman family each own 6.6 percent of 185 Marcy LLC.  Specifically, 185 Marcy LLC is equally owned by Aryeh Gutman's wife and 14 children.

123.  185 Marcy Avenue property has been netting, after deducting all legitimate expenses, approximately $1.5 million annually for the past thirteen years, for a total of $19.5 million of income.

124.  These acts constitute criminal acts, including mail fraud, wire fraud and financial institution fraud by Aryeh Gutman and members of the Gutman family.

125.  Upon information and belief, in or about March 2001 Aryeh Gutman caused the creation of a new entity, Broadway Central Management LLC. ("Broadway LLC").